# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MARIA SHARP, | ) | CASE NO. 1:20-cv-01683 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| ASHTABULA COUNTY SHERIFF'S | ) | **OPINION** |
| OFFICE, et al., | ) | |
| | ) | |
| Defendants. | | |

Pending before the Court is Defendants Ashtabula County Commissioners (improperly identified in the Complaint as "Ashtabula County Sheriff's Office") ("Ashtabula County") and William Johnson's ("Johnson") (collectively "Defendants") Motion for Summary Judgment (ECF No. 15). For the following reasons, the Motion is GRANTED.

## I.    BACKGROUND

### A.  Factual Background

#### 1.  Employment and Pregnancy

In April 2018, Johnson hired Plaintiff Maria Sharp ("Plaintiff") as a Dispatcher with the Ashtabula County Sheriff's Office ("ACSO") (at all times relevant to the allegations in the Complaint, Johnson was the Ashtabula County Sheriff). (ECF No. 1, Compl. at PageID #3; ECF No.15, Mot. at PageID #314). During her tenure as a Dispatcher, Plaintiff trained for and was offered the full-time position of Road Deputy. (ECF No.15, Mot. at PageID #314-15; ECF No.17, Opp. at PageID #462). As a new Deputy, Plaintiff was subject to a one-year probationary period during which she could be terminated with no appeal rights through her union. (ECF No.15, Mot. at PageID #315). During her interview for the Road Deputy position, Plaintiff revealed to Johnson that she was pregnant. (*Id.*; ECF No.17, Opp. at PageID #463). Plaintiff was able to work as a

Road Deputy until August 2019, at which time she presented a doctor's note stating that she could not return to work absent light duty.  (ECF No.15, Mot. at PageID #316).

Johnson informed Plaintiff that the ACSO did not offer light duty to Deputies.  *Id*.  Plaintiff was then placed on Family Medical Leave Act ("FMLA") leave.  *Id*.  Per the ACSO FMLA policy, Plaintiff was entitled to twelve weeks of unpaid leave.  (*Id*. at PageID #318-19).  However, Plaintiff testified that she believed that she was entitled to twelve weeks of paid leave followed by additional unpaid leave.  (*Id*. at PageID #316-17; ECF No. 13-1, Sharp Dep. at PageID #101-103).

### 2.  Alternate Position and Termination

On August 29, 2019, Plaintiff presented a second doctor's note informing that she could return to full-time work on December 17, 2019, after her available leave expired.  (ECF No.15, Mot. at PageID #317).  In light of her return-to-work date and need for light duty, Plaintiff sought an alternative position with the ACSO.  (ECF No.17, Opp. at PageID #463-64).  First, she spoke to ACSO then-Deputy Brian Cumberledge ("Cumberledge") about a possible opening  in the Evidence Department.  (ECF No.15, Mot. at PageID #315; ECF No.17, Opp. at PageID #464).  Although Plaintiff claims that Cumberledge was her immediate supervisor while she was pregnant, he was in fact not her immediate supervisor, nor did he have authority to offer her a position in the Evidence Department.[1]  (ECF No.15, Mot. at PageID #315).  After the Evidence Department position was filled, Cumberledge followed up with Plaintiff, informing her about a possible position in the Civil Division.  (ECF No.15, Mot. at PageID #316; ECF No.17, Opp. at PageID #464).  Plaintiff was not offered that position either.  (ECF No.17, Opp. at PageID #464).  Cumberledge never offered Plaintiff an alternate position.  (ECF No.15, Mot. at PageID #316).

On September 17, 2019, Johnson formally presented Plaintiff with an Offer Letter[2] offering

---

[1] See also ECF No. 14-1, Cumberledge Aff. at PageID #257, 268; ECF No. 15-1, Johnson Aff. at Page ID# 333.
[2] See ECF No 15-1, Offer Letter at PageID #339.

Plaintiff the only available full-time ACSO position in the Dispatch Division; he purportedly did this "[d]ue to the fact that [her] FMLA leave will not be sufficient to secure [her] Deputy status" because her leave expired before her return-to-work date.  (ECF No.15, Mot. at PageID #317).  The Offer Letter also advised Plaintiff that she would be considered for a return to the Deputy Division after she was cleared by her doctor to return to work without restriction. (*Id*.; ECF No. #15-1, Johnson Aff. at PageID #335).  Plaintiff's return to the Deputy Division was not guaranteed, but Johnson "made clear" that there was a high likelihood that Plaintiff would resume her Deputy position after being medically cleared.  *Id*.  The Offer Letter also clearly stated "[i]f you choose to decline the dispatch position I am requesting your resignation from the department upon the completion of your FMLA leave."  (ECF No. 15-1, Offer Letter at PageID #339).

Plaintiff never responded to the Offer Letter.  (ECF No.15, Mot. at PageID #318).  On October 28, 2019, Plaintiff's FMLA leave expired, and she had not accepted the offered  Dispatch Division position.  *Id*.  As a result, Johnson presented Plaintiff with a Termination Letter[3] explaining that Plaintiff "had exhausted all of her paid and unpaid leave, and that consequently Plaintiff's employment with the ACSO had ended."  (*Id*.;  ECF No. #15-1, Johnson Aff. at PageID #335).

### 3.  ACSO Policies and Procedures

The Union Contract[4] between the ACSO and Ohio Patrolmen's Benevolent Association provides the terms and conditions for employment of ACSO Deputies.  (ECF No.15, Mot. at PageID #318).  Under the Union Contract, newly hired full-time Deputies must complete a one-year probationary period during which a Deputy can be terminated with no appeal rights.  *Id*.  It also includes the ACSO FMLA policy, providing for twelve weeks of unpaid leave for birth or

---

[3] See ECF No 15-1, Termination Letter at PageID #340.
[4] See ECF No 15-1, Union Contract at PageID #345-89.

adoption of a child.  (*Id*. at PageID #318-19).  Last, it provides that in the event an employee "becomes unable to perform the essential duties of his position, but is still able to perform the essential duties of a vacant, lower level position, the employee may voluntarily request reduction to the lower level position…in writing, stating the reason for the request, and…accompanied by a physician's statement."  (*Id*. at PageID #319).  The ACSO policy does not contain a provision allowing light duty.  *Id*.

### B.  Procedural Background

After her termination, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and was issued a Right to Sue letter from the EEOC on July 24, 2020.  (ECF No. 1, Compl. at PageID #2).  On July 30, 2020, Plaintiff filed her Complaint in this Court against Defendants, alleging that she experienced sex-based discrimination on the basis of her pregnancy and that Johnson aided and abetted the discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e and Ohio Rev. Code §§ 4112.02(A), (J).  (*Id*. at PageID #4-6).  On January 27, 2022, Defendants filed their Motion for Summary Judgment (ECF No. 15); it asserts that Plaintiff's Title VII and state law claims should be dismissed as a matter of law because there is no genuine issue of material fact that (1) there is a nexus between Plaintiff's termination and pregnancy; (2) there is a legitimate nondiscriminatory reason for Plaintiff's termination; and (3) there is neither an underlying case of discrimination nor evidence of an intentional, discriminatory act to support her claim of aiding and abetting.  (ECF No. 15, Mot. at PageID #313).  Plaintiff filed her Opposition (ECF No. 17) to the Motion, to which Defendants replied (ECF No. 19).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  In most cases, this requires the Court to  decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

5

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id*.

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record which create a genuine issue of material fact.  *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts.  *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4).  The trial court also does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

## III.    LAW AND ANALYSIS

Plaintiff argues that Ashtabula County's termination of her employment was discriminatory.  She makes Title VII and state claims of sex-based discrimination on the basis of pregnancy.  *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k), and Ohio Rev. Code § 4112.02.  Plaintiff also argues that Johnson aided and abetted Ashtabula County in unlawful sex-based discrimination on the basis of pregnancy.  *See* Ohio Rev. Code § 4112.02(J). The Court rejects her arguments.

### A.  Title VII Sex-Based Discrimination

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to her employment because of that individual's sex, including on the basis of pregnancy. 42 U.S.C. § 2000e(k).  "A claim of discrimination on the basis of pregnancy 'must be analyzed in

the same manner as any other sex discrimination claim brought pursuant to Title VII.'" *Cline v. Catholic Diocese of Toledo*, 2036 F.3d 651, 657-8 (6th Cir. 2000); quoting *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996) ("Congress manifested its belief that discrimination on the basis of pregnancy constitutes discrimination based on sex.").

The Sixth Circuit has made clear that under Title VII, a plaintiff may satisfy her burden of establishing sex-based discrimination by "presenting either direct evidence of discriminatory actions by the defendant or by showing the existence of circumstantial evidence that creates an inference of discrimination." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d. 359, 363 (6th Cir. 2010). The Sixth Circuit has described direct evidence as "smoking gun evidence that explains itself." *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (explaining that "[d]irect evidence is evidence that proves the existence of a fact without requiring any inferences to be drawn"). "Direct evidence, if believed, requires a conclusion by the fact-finder that unlawful discrimination was at least a "motivating factor" for the employer's actions." *Younis*, 610 F.3d at 363; *See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir.2003) (*en banc* ). Conversely, circumstantial evidence "allow[s] a factfinder to draw a reasonable inference that discrimination occurred." *Kyle-Eiland v. Neff*, 408 Fed.Appx. 933, 939-40 (6th Cir. 2011) (quoting *Wexler*, 317 F.3d at 520). Courts in the Sixth Circuit use the burden-shifting framework set out in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973), to analyze claims based on circumstantial evidence. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2021).

### 1.  Direct Evidence.

Plaintiff has not presented direct evidence of discrimination.  Plaintiff argues that direct evidence of discrimination exists, consisting of Johnson allegedly questioning her willingness and

ability to return to work and differentiating her time off for pregnancy from time off for an injury. (ECF No. 17, Opp. at PageID #461).  She also alleged that Johnson held a misogynistic belief that once a woman becomes a mother, she will want to stay home rather than work.  *Id*.  These allegations come entirely from Plaintiff's deposition testimony.  (*See Id.* at PageID #469-70).  As such, this evidence is Plaintiff's own self-serving testimony and does not establish direct evidence of discrimination.  *See Brahmbhatt v. Gen. Products Corp.*, *Brahmbhatt v. Gen. Products Corp.*, No. 1:12CV919, 2014 WL 2711839, *11, *report and recommendation adopted,* No. 1:12CV9192014, 2014 WL 3404655 (S.D. Ohio 2014) ("Courts have held that a plaintiff's testimony alone is not enough to establish a question of fact as to whether direct evidence of racial or sexual discrimination exists."); *see also Shahbabian v. Trihealth, Inc.,* No. 1:18-CV-790, 2021 WL 3110073, *8 (S.D. Ohio 2021) ("A plaintiff's testimony, alone, generally fails to establish a question of fact as to whether discrimination happened.").

### 2.  Circumstantial Evidence

Having determined that Plaintiff failed to produce direct evidence that her pregnancy was the cause of her termination, the Court now turns to the burden shifting *McDonnell Douglas* framework.  The *McDonnell Douglas* framework has three steps.  First, the plaintiff bears the burden of establishing a *prima facie* case of discrimination.  *Miles*, 946 F.3d at 887; *citing McDonnell Douglas*, 411 U.S. at 802.  Second, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for its action.  *Id*.; *Burzynski v Cohen*, 264 F.3d 611, 622 (6th Cir. 2001).  Third, once the employer has articulated a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason was a mere pretext for discrimination.  *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008); *See also McDonnell Douglas*, 411 U.S. at 805.  If the plaintiff can establish that the employer's stated reason was pretext for discrimination, "the fact-finder may reasonably infer discrimination."

*Miles*, 946 F.3d at 887.

### 3.  *McDonnell Douglass* **Analysis**

In order for Plaintiff to establish a *prima facie* case of sex-based discrimination, she must show that (1) she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision.  *Boyd*, 88 F.3d at 413.  There is no dispute that Plaintiff was pregnant, and Defendants concede that Plaintiff was qualified for her position.  (ECF No. 15, Mot. at PageID #322).  Defendants argue that Plaintiff cannot satisfy the fourth element because there is no nexus between her pregnancy and her termination.[5]  *Id.*

**a.  Plaintiff has failed to establish a *prima facie* case of sex-based discrimination.**

**i.  Adverse Employment Decision**

Under Title VII, an adverse employment decision is an action by an employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  *Burlington Industries v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *See* 42 U.S.C. § 2000e et seq.  There is no dispute that Plaintiff was terminated and therefore she was subject to an adverse employment decision.  Regardless of this Court's finding that Plaintiff was subjected to an adverse employment decision, there is no evidence that it was connected to or motivated by her pregnancy.

---

[5] Defendants did not brief their argument that Plaintiff was not subjected to an adverse employment decision and suggest Plaintiff abandoned her job by exhausting all leave and refusing to communicate regarding the offer to work in an alternate position.  (ECF No. 15, Mot. at PageID #322, fn. 3).

### ii.    Nexus Between Pregnancy and Termination

There is no nexus between Plaintiff's termination and her pregnancy.  A plaintiff can prove nexus through comparison to "another employee who is similarly situated in her or his ability or inability to work [and] received more favorable benefits."  *Latowski v. Northwoods Nursing Center*, 549 Fed.Appx. 478, 483 (6th Cir. 2013); quoting *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996).

#### <u>Comparators</u>

Plaintiff argues that although the ACSO has not had a light duty policy since 2012, male deputies were given light duty accommodations for various work and non-work-related injuries. (ECF No. 17, Opp. at PageID #464).  She claims that light duty was offered to Deputy Rick Schupska ("Schupska") in 2018 for a non-work-related injury; Deputy Matt Johns ("Johns") in 2018 for a work-related injury; and Deputy Taylor Cleveland ("Cleveland") in 2007 and 2018 for both work and non-work-related injuries.  (*Id*. at PageID #464-65).

None of the male Deputies qualify as comparators that were treated more favorably for the sake of Plaintiff's claim.  They are not similarly situated and there is no evidence that any of the male Deputies were offered or received light duty accommodations.

#### <u>Leave</u>

Plaintiff was a probationary employee with less than one year as a Deputy.  (ECF No. 15, Mot. at PageID #314).  None of the male deputies she mentions were in their probationary period, and all had more time in service than Plaintiff.  (ECF No. 19, Rep. in Supp. at Page 6).  The male deputies were entitled to more FMLA leave than Plaintiff.  (See ECF No. 15-2, Union Contract at PageID # 373, 378-82).  Johns took both FMLA and Workers Compensation leave.  (ECF No. 15-3, Johns Aff. at PageID #390).  Schupska took both FMLA and accrued paid leave.  (ECF No. 15-

2, Moisio Aff. at PageID # 342).  Accordingly, they were not similarly situated.

**Light Duty**

Johnson and Chief Deputy Terry Moisio ("Moisio") both stated that Johns and Schupska were not offered, nor did they receive light duty.  (ECF No. 15-1, Johnson Aff. at PageID #337; ECF No. 15-2, Moisio Aff. at PageID #342-343).  Johns also stated that he was not given and never worked a light duty position.  (ECF No. 15-3, Johns Aff. at PageID #390).  There is no evidence that either of them sought a light duty accommodation or presented doctor's notes with restrictions to the ACSO.[6]  (ECF No. 15, Mot. at PageID #324).

Cleveland sustained a work-related injury to his hand in 2007 and donated a kidney in 2018.  (ECF No. 18-1, Cleveland Aff. at PageID #485).  As to his 2007 injury, this occurred before the ACSO stopped providing light duty to employees with workers' compensation claims in 2012. (ECF No. 15, Mot. at PageID #323; ECF No. 15-2, Moisio Aff. at PageID #342).  Thus, Plaintiff and Cleveland are not similarly situated because they were employed under different operating ACSO light duty policies.  *See Mullett v. Wayne-Dalton Corp.*, 338 F.Supp2d 806, 815-16 (N.D. Ohio 2004) (Persons governed under a former leave policy are not similarly situated when the plaintiff is governed under a new leave policy).  As to his 2018 kidney donation, there is no evidence that Cleveland was offered or received light duty, or that he presented a doctor's note requesting light duty restrictions.[7]  (ECF No. 15, Mot. at PageID #324).

To the extent that Plaintiff relies on Cleveland's statement[8] that he "understood" his position in 2018 to be "an offer of light duty work" and an alleged statement[9] made by Johns to another employee that he was on light duty, she is misguided.  There is a difference between what

---

[6] See ECF No. 15-1, Johnson Aff. at PageID #337; ECF No. 15-2, Moisio Aff. at PageID #342-343.
[7] See ECF No. 15-1, Johnson Aff. at PageID #337; ECF No. 15-2, Moisio Aff. at PageID #433.
[8] See ECF No. 18-1, Cleveland Aff. at PageID #485.
[9] See ECF No. 19-2, Francis Aff. at PageID #486; ECF No. 13-1, Sharp Dep. at PageID #96-8.

the male deputies understood or thought to be true and what actually was true. Moreover, the evidence of Johns alleged statement is hearsay, and therefore, must be disregarded. *See State Mut. Life Assur. Co. of America v. Deer Creek* Park, 612 F.2d 259, 264 (6th Cir.1979) and *Daily Press, Inc. v. United Press International,* 412 F.2d 126 (6th Cir.) cert. denied, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56 and must be disregarded." ).

### b. Defendants have satisfied their burden to provide a legitimate non-discriminatory reason for Plaintiff's termination.

As previously discussed, Johnson offered Plaintiff a full-time position, that she was qualified for and could perform within her restrictions. (ECF No. 15, Mot. at PageID #313, 324). Plaintiff failed to respond to or accept the offer for the Dispatch Division position before her leave expired. (*Id*. at PageID #313). She was on notice that she would lose her employment with the ACSO if she did not accept the position, and she would be asked to resign. (ECF No. 15-1, Offer Letter at PageID #339). Defendants argue that Plaintiff's failure to accept the Dispatch position coupled with her leave exhaustion during her probationary period are legitimate non-discriminatory reasons for her termination. (ECF No. 15, Mot. at PageID #326). The Court agrees.

### c. Plaintiff has failed to demonstrate that Ashtabula's reasons are pretextual.

The Court now turns to the issue of whether Plaintiff has offered sufficient evidence to create a genuine dispute of material fact as to whether Defendants' legitimate nondiscriminatory reasons are pretext for sex-based discrimination. See *Boyd*, 88 F.3d at 413 ("[Plaintiff] may satisfy this burden by showing that the…reasons…were not its true reasons, but were a pretext for intentional discrimination."); citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). The Court finds that Plaintiff has not shown that the asserted reasons for her termination are pretextual.

In the Sixth Circuit, a plaintiff can establish pretext in one of three ways: "show that the

12

proffered reason (1) 'had no basis in fact,' (2) 'did not actually motivate the employer's action,' or (3) 'was insufficient to motivate the employer's action.'" *Okakpu-Mbah v. Postmaster Gen. of the United States*, No. 21-2811, 2022 WL 3928534, at \*7 (6th Cir. 2022) (citing *O'Donnell v. City of Cleveland*, 383 F.3d 718, 728-29 (6th Cir. 2016); *see also Miles*, 946 F.3d at 888. Plaintiff argues that Defendants' reasons are insufficient to motivate her termination. (ECF No. 17, Opp. at PageID #472). The Court disagrees.

It is undisputed that Johnson hired Plaintiff for the full-time Deputy position with knowledge that she was pregnant.[10] (ECF No. 1, Compl. at PageID #3). Plaintiff did not follow ACSO policy by submitting a written request for reduction to a lower-level position, along with the reason for the request. (ECF No. 15, Mot. at PageID #325; ECF No. 15-2, Union Contract at PageID # 376-77). However, Johnson offered Plaintiff a full-time position that Plaintiff was qualified for; he did so in an effort to bridge the gap between her leave expiration date and her return-to-work date. (*Id*.; ECF No 15-1, Offer Letter at PageID #339). Johnson went above and beyond the requirements of the ACSO policy for Plaintiff. The Court finds that Plaintiff's termination was not motivated by her pregnancy, but by her failure to respond to Johnson's offer before her leave expired. Johnson warned Plaintiff in the Offer Letter that her failure to accept the offered position would result in her resignation/termination.[11] Plaintiff neither accepted the offer nor responded to Johnson's letter, despite Johnson's warning. (ECF No. 15, Mot. at PageID #313). The Court finds this sufficient to motivate her termination.

## B. Sex-Based Discrimination in Violation of Ohio Rev. Code § 4112.02

In Ohio, it is an unlawful discriminatory practice for any employer to discharge without cause, or otherwise discriminate against any person because of sex. Ohio Rev. Code § 4112.02(A). Federal and state

---

[10] See also ECF No. 15, Mot. at PageID #314; ECF No. 17, Opp. at PageID #463.
[11] See ECF No 15-1, Offer Letter at PageID #339.

sex-discrimination claims are treated the same.  *See Kocak v. Cmty. Health Partners of Ohio, Inc.,* 400 F.3d 466, 471–72 (6th Cir.2005) ("[F]ederal case law interpreting Title VII…is generally applicable to cases involving alleged violations of R.C. § 4112.") (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)); *Cline*, 206 F.3d at 668 ("Ohio courts utilize the same *McDonnell Douglas* analysis…when analyzing discrimination claims brought under the Ohio Civil Rights Act, Ohio Rev. Code Ann. § 4112.").  Accordingly, Plaintiff's state law claim for sex-based discrimination fails.

### C.  Aiding and Abetting in Violation of Ohio Rev. Code § 4112.02(J)

Ohio Rev. Code § 4112.02(J) provides that it is an unlawful discriminatory practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."  Defendants argue that the Court must dismiss the state law aiding and abetting claim against Johnson because they are entitled to summary judgement on the underlying pregnancy discrimination claims.[12]  *See Weinrauch v. Sherwin-Williams Company*, No. 1:18-cv-01696, 2019 WL 3007031, *14 (N.D. Ohio 2019) ("Where a court finds that a defendant is entitled to summary judgment on the underlying claims of discrimination and retaliation, the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims.).  The Court agrees.  Accordingly, the state law aiding and abetting claim fails as a matter of law.

---

[12] See ECF No. 15, Mot. at PageID #330.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 15) and finds that Defendants are entitled to judgment as a matter of law.

**IT IS SO ORDERED.**

Date: June 5, 2023

_____

**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**